```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

Steven A. Acton,                  :

      Plaintiff,              :

  v.                              :     Case No. 2:12-cv-1049

                                 :     JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,        Magistrate Judge Kemp

      Defendant.              :

                         REPORT AND RECOMMENDATION

                         I.    <u>Introduction</u>

    Plaintiff, Steven A. Acton, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits.  That application was filed on June 24, 2009, and alleged that plaintiff became disabled on February 10, 2005.

    After initial administrative denials of his application, plaintiff was given a videoconference hearing before an Administrative Law Judge on March 24, 2011.  In a decision dated April 14, 2011, the ALJ denied benefits.  That became the Commissioner's final decision on September 15, 2012, when the Appeals Council denied review.

    After plaintiff filed this case, the Commissioner filed the administrative record on January 22, 2013.  Plaintiff filed his statement of specific errors on February 20, 2013.  The Commissioner filed a response on April 24, 2013.  Plaintiff filed a reply brief on May 8, 2013, and the case is now ready to decide.

    II.   <u>Plaintiff's Testimony at the Administrative Hearing</u>

    Plaintiff, who was 54 years old at the time of the administrative hearing and who has an Associates Degree, which he

obtained in 2008, testified as follows. His testimony appears at pages 39-75 of the administrative record.

Plaintiff was wearing a knee brace at the hearing. He had been wearing it since his last surgery two years before, although it was not prescribed for him by a doctor. He lived in a house with a basement and was able to go up and down steps to do laundry. He drove to the hearing, and was able to do so notwithstanding the fact that he occasionally lost feeling in his left hand. He had a background as a landscaper but after his onset date, he went to school and got an Associate's Degree in web design.

Plaintiff had recently worked as an art instructor, a job which ended only a week before the hearing. He worked two to three hours per week. Before his onset date, he worked in interior and exterior landscaping. As an exterior landscaper, he installed shrubs and trees and did very heavy lifting. As an interior landscaper, he pruned trees growing inside shopping malls, also a job which required heavy lifting.

Plaintiff testified that his most significant problem was stiffness and limited mobility in his neck. If he looked down, he got a headache instantly. That problem began in 2004. Since then, he has had chiropractic treatment including traction, electric stimulation, and massage therapy. The numbness and tingling in his left hand was the next most significant problem, although he also had problems gripping with both hands. His upper back was also troublesome. Finally, he had psychological effects from his physical condition, including depression due to not being able to do things he was formerly capable of doing.

Plaintiff could walk for fifteen minutes without stopping and could stand for about the same length of time before he got neck and back pain. Sitting for any extended period was also uncomfortable. He could lift ten pounds. He experienced some mental confusion as a result of medications.

Plaintiff's wife was employed, so he spent a good bit of

time home alone.  He could take care of his personal needs and help out with chores such as doing laundry, running the sweeper, and dusting.  He also did dishes, cooked and shopped.  He was able to complete the class time and homework for his degree, and he also helped his parents out with driving.  He had no difficulty getting along with others.  He was able to read articles about art.  With pain, he could bend over to touch his toes or squat down to the floor.  He could pick up small objects with either hand but could not reach overhead.  He did not believe he could work five days a week, eight hours a day.

### III.  The Medical Records

The medical records in this case are found beginning on page 291 of the administrative record.  The Court summarizes the pertinent records as follows.

The first fifty-plus pages of the medical records show that plaintiff underwent a variety of tests, primarily for wrist pain and chest pain.  No cardiac condition was seen, but he did have some slight problems with his right wrist.  (Tr. 291-346).

Plaintiff had an MRI done on September 25, 2008.  In his cervical spine, he had mild right neural foraminal stenosis at C5-6 and severe left neural foraminal stenosis at C6-7 due to a shallow left foraminal disc protrusion.  (Tr. 348-49).

Sometime in 2008, plaintiff underwent a work evaluation done by a physical therapist, Mr. Hintz.  At that time, he was able to lift 40 pounds.  (Tr. 837).

Dr. Maynard (the Court refers to him as "Dr." although noting that he is a chiropractor, not a medical doctor, and that the Commissioner's memorandum refers to him as "Mr.), plaintiff's treating chiropractor, wrote a letter on December 21, 2008 concerning plaintiff's condition.  The letter noted that plaintiff had developed occipital neuralgia related to his neck sprain, facet arthropathy, and cervical degenerative disc

disease.  (Tr. 403-04).  The letter was written for purposes of supporting plaintiff's workers' compensation claim.  Dr. Maynard also had plaintiff fill out a questionnaire on February 18, 2009, and the form showed that plaintiff had improved with treatment both in reduction of pain and increase in mobility.  (Tr. 413-14).  The records also show that he participated in a course of physical therapy, but did not appear to meet the goals set at the outset.  There are also a large number of treatment notes dealing with plaintiff's diabetes and sleep apnea, but none of them are significant as far as the issues in this case are concerned.  Plaintiff did describe his neck and back pain as "worsening" in 2009.  See, e.g., Tr. 499.  A note from Dr. Hussein also shows an increase in neck pain in 2009, with the pain made worse by exertion and prolonged sitting in one position.  (Tr. 512).

   On June 16, 2009, Dr. Maynard wrote another letter concerning plaintiff's treatment and symptoms.  He stated that plaintiff was not responding well to the current treatment regimen and that he had restriction in extension and bilateral bending.  He recommended a neurosurgical evaluation.  (Tr. 545).  It appears that Dr. Lobel did that evaluation in July, 2009, and recommended against surgery.  (Tr. 575-75).  A letter written by Dr. Maynard in May, 2009 indicated that treatment had not cured plaintiff's problems but it had "assist[ed] him greatly in dealing with his activities of daily living, helped him graduate from his vocational rehabilitation program and allows him to help him take care of his family."  (Tr. 557).  Plaintiff filled out another questionnaire for Dr. Maynard on June 15, 2009, on which he stated that he "was doing fine until recently."  (Tr. 651).

   Dr. McCloud, a state agency physician, completed a residual functional capacity report on September 7, 2009.  He concluded that plaintiff could do a relatively full range of medium work, with only occasional climbing of ladders, ropes and scaffolds and

some limitations on gross manipulation.  Dr. McCloud explained that he found plaintiff's report of symptoms only partially credible due to inconsistencies with the medical evidence of record showing that plaintiff could lift between 40 and 100 pounds and that many of his conditions were mild and his strength and sensory examinations were normal.  (Tr. 656-63).  Another state agency reviewer, Dr. Hill, subsequently affirmed that evaluation.  (Tr. 816).

    Dr. Maynard continued to update plaintiff's workers' compensation attorney, indicating in the latter part of 2009 that he had referred plaintiff to Dr. Masone, a pain specialist.  Various notes from Dr. Masone show that he treated plaintiff for conditions he diagnosed as radiculitis of the cervical spine, cervical foraminal stenosis, occipital neuralgia, cervical degenerative disc disease, and cervical facet arthropathy.  See, e.g., Tr. 858.  He administered injections and prescribed medication, and also discussed a radiofrequency ablation procedure.  Dr. Masone also completed a physical capacity evaluation form on February 28, 2011, stating that plaintiff could stand, sit and walk for a total of eight hours in a work day, could lift up to ten pounds occasionally, could not use his hands for repetitive pushing and pulling, and could not climb ladders.  He could also not reach above shoulder level, but he could occasionally bend, squat, crawl, and climb steps.  (Tr. 875-76).  Dr. Maynard expressed his opinion of plaintiff's physical abilities in a lengthy report dated February 27, 2011, stating that plaintiff could not return to his previous line of work and also that he was permanently disabled under Department of Labor and BWC standards.  He completed a form indicating that plaintiff could sit, stand and walk for a total of eight hours in a work day (four of them sitting), could occasionally lift up to 25 pounds, could never crawl or climb, could occasionally bend,

squat and reach, could not work around unprotected heights, and could not do simple grasping or manipulation with his right hand or push and pull arm controls. (Tr. 933-43).

## IV. The Vocational Testimony

A vocational expert, Dr. Growick, also testified at the administrative hearing. His testimony begins at page 76 of the record.

Dr. Growick classified plaintiff's past work as a landscaper as heavy and semi-unskilled. The nursery worker or indoor trimmer job was heavy and unskilled. The instructor job is light and skilled, but the ALJ eliminated that job from further questions because it did not rise to the level of substantial gainful activity.

Dr. Growick was asked questions about someone who could work at the light exertional level, who could not climb ladders, ropes or scaffolds, who could occasionally climb ramps and stairs, who could occasionally stoop, kneel, crouch and crawl, who could do frequent handling and frequent fingering bilaterally, who could frequently push and pull with his arms and frequently push and pull foot pedals with his right leg, who could reach overhead occasionally with his left arm, and who should avoid hazards such as unprotected heights and working around dangerous moving machinery. He responded that such a person could not do plaintiff's past work, but that such a person could do light jobs such as bench assembler or machine tender. If the same person could lift up to 40 pounds occasionally and 20 pounds frequently, could stand and walk six hours in a workday, could sit for two hours, could occasionally climb ropes, ladders or scaffolds, could occasionally balance and handle, and could finger frequently, those jobs would still be available. Dr. Growick also testified that plaintiff had not acquired any transferable job skills. Finally, in response to questions from plaintiff's

attorney about Exhibit 34F, which is the 2011 report from Dr. Maynard, Dr. Growick said that someone so limited would be unemployable.

                V.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 14 through 32 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured status requirements of the Social Security Act up to December 31, 2010. Next, he found that plaintiff had not engaged in substantial gainful activity after his alleged onset date through his last insured date. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including obesity, diabetes mellitus, carpal tunnel syndrome, headaches, degenerative disc disease of the cervical and thoracic spine, osteoarthritis of the left knee, and sleep apnea. The ALJ also found that plaintiff's impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform light work except that could never climb ladders, ropes and scaffolds, could occasionally climb ramps and stairs, could occasionally stoop, kneel crouch, and crawl, could occasionally reach overhead with his left arm, could frequently handle and finger bilaterally, could frequently push and pull with both arms and operate foot pedals with his right leg, and had to avoid exposure to hazards such as unprotected heights and dangerous moving machinery. The ALJ found that, with these restrictions, plaintiff could perform those jobs identified by the vocational expert such as bench assembler and machine tender,

and that such jobs existed in significant numbers in both the national and state economies.  Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

> VI.  Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises the following issues: (1) that the ALJ did not properly evaluate either the opinions of the treating sources, Drs. Masone and Maynard, or the state agency reviewers, Drs. McCloud and Hill; and (2) that the ALJ did not perform a proper credibility assessment.  The Court reviews the ALJ's decision using this legal standard:

> Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's

decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

The Court begins with the way in which the ALJ dealt with the chiropractic opinion evidence. As plaintiff notes, the ALJ's discussion of that evidence (and, in particular, the 2011 opinion) was quite brief, consisting of the statement that the findings were given "no weight" given their inconsistency with prior observations and the chiropractor's earlier opinion that plaintiff should return to work as soon as possible, coupled with the observation that Dr. Maynard was "not an acceptable medical source, and opinions regarding the ultimate issue of disability are reserved to the Commissioner." (Tr. 22).

The law in this Circuit is clear that a chiropractor is not an acceptable medical source and that the regulation (20 C.F.R. §404.1527(d)) requiring special deference to the opinions of treating sources) does not apply to chiropractors. Walters v. Comm'r of Social Security, 127 F.3d 525, 530 (6th Cir. 1997). As this Court has said, "chiropractors cannot establish the existence of medically determinable impairments, cannot give medical opinions, and cannot be considered treating sources whose medical opinions are entitled to controlling weight." Wafford v. Astrue, 2010 WL 5421300, *4 (S.D. Ohio Dec. 27, 2010). On the other hand, SSR 06-3p counsels that "opinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion," Cruse v. Comm'r of Social Security, 502 F.3d 532, 541 (6th Cir. 2007), and such opinions may be used to determined "key issues such as impairment severity and functional effects, along with the other evidence in the file." SSR 06-3p. Ultimately, if the ALJ applies the "factors of supportability and

-9-

consistency" to chiropractic opinion evidence, no error in application of this policy occurs. Kerlin v. Astrue, 2010 WL 3937423, *8 (S.D. Ohio March 25, 2010), adopted and affirmed 2010 WL 3895175 (S.D. Ohio Sept. 29, 2010).

The ALJ did, briefly, address the issues of supportability and consistency when he concluded that Dr. Maynard's 2011 evaluation was not consistent with all of his prior treatment notes and his statements that plaintiff should be able to return to work soon. That is, in fact, what those notes indicate, and there is little, if any, explanation given for why Dr. Maynard appears to have reached a different conclusion in his later report. Plaintiff criticizes the ALJ for failing to provide a more detailed statement of his rationale (presumably one which cited to specific treatment notes and to the language or findings in those notes with which the later opinion was inconsistent), arguing that the Commissioner's memorandum on this issue is simply a *post hoc* rationalization of the ALJ's decision which this Court may not accept.

In the Court's view, this argument is misplaced for two reasons. First, the Commissioner has not actually provided the Court with a *post hoc* rationalization; it is simply an expansion of the rather terse reasoning process which is actually contained in the administrative decision, rather than an entirely new argument. Second, an ALJ is not, in this context, required to cite chapter and verse concerning inconsistencies in the record in order for the decision to pass muster. This is not like the situation involving a treating source's opinion, where a detailed explanation is required by the applicable regulation and the failure to provide it deprives a claimant of an important right. See, e.g., Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). "Thus, while claimants are generally entitled to receive an explanation when an ALJ discounts or even adopts a treating source's opinion, this entitlement does not extend to an

-10-

ALJ's adoption or rejection of the opinions of nontreating sources." Johnson v. Astrue, 2010 WL 5559542, *6 (N.D. Ohio Dec. 3, 2010), adopted and affirmed 2010 WL 5478604 (N.D. Ohio Dec. 30, 2010).  Since, by definition, even though Dr. Maynard did treat plaintiff, due to his status as a chiropractor he does not qualify as a treating source, and the ALJ was not obliged to provide a detailed explanation for discounting his views.  The explanation provided does touch on the appropriate factors, and, as the Commissioner's memorandum demonstrates, it is substantially supported by the record.  That is enough to insulate the ALJ's decision on this issue from reversal by this Court.

    The same rationale does not apply, however, with respect to Dr. Masone.  He is a treating source, and it has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it

-11-

was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). Finally, the ALJ cannot simply reject completely and without explanation a treating source opinion which is not given controlling weight; rather, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." Blakley v. Comm'r of Social Security, 581 F.3d 399, 406 (6th Cir. 2009).

The starting point of this analysis is always the rationale provided by the ALJ, since the Court must rely on the ALJ's statement of reasons why a treating source opinion was rejected and may not attribute reasons to the ALJ which are not stated in the administrative decision. See, e.g., Williams v. Astrue, 2009 WL 2148625, *8 (S.D. Ohio July 14, 2009) ("It is highly doubtful that the Commissioner's post-hoc rationalizations can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh a treating medical source opinion as required by the Regulations").

Here, the ALJ explained his reasoning as follows:

> As for the opinion evidence, the undersigned gives the opinion of Dr. Masone, the claimant's pain management specialist, some weight with regard to the claimant's standing and walking abilities, grasping and fine manipulation abilities, ability to use his feet for repetitive movements, and postural limitations as consistent with the evidence of record and the claimant's reported abilities and activities. (Ex. 31F). However, the undersigned finds the claimant's lifting capacity greater than indicated based on vocational evaluation data (Ex. 29F).

-12-

(Tr. 22).  Plaintiff contends that this explanation falls far short of what §404.1527(d) and Wilson require.  He argues that the ALJ failed even to acknowledge that Dr. Masone was a treating source and that he did not explicitly consider the question of whether his opinion was entitled to be given controlling weight. (Reply memorandum, Doc. 12, at 3).  He also asserts that it was error to discount Dr. Masone's lifting restrictions based on the evaluation by the BWC, because the opinion expressed there came not from another physician but from a physical therapist, and such opinions cannot be used to rebut the views of a treating source.  (Statement of Errors, Doc. 8, at 9).

It is true that the Commissioner's memorandum, in discussing Dr. Masone's opinion, does not directly characterize him as a treating source.  On the other hand, the Commissioner acknowledges that plaintiff's cited authority, Hensley v. Astrue, 573 F.3d 263 (6th Cir. 2009), deals with the treating source regulation, but the Commissioner argues that Hensley is inapplicable.  This Court agrees; Hensley involved an ALJ's choosing to credit the opinion of a non-treating source over that of a treating source for no reason other than the fact that the two physicians disagreed.  That rationale was rejected by the Court of Appeals because the ALJ did not cite any reason described in §404.1527(d)(2) for giving less than controlling weight to the treating source opinion.

If one reads the ALJ's decision as a whole, that is not what occurred here.  The ALJ, in the discussion leading up to his consideration of the opinion evidence, considered the conditions treated by Dr. Masone, including headaches and disease of the cervical spine.  He noted that prior to Dr. Masone's treatment, such as when seeing Dr. Lobel, plaintiff reported relatively moderate amounts of pain in his neck and upper back.  Also, plaintiff received only conservative care in the form of physical

-13-

therapy and chiropractic case. (Tr. 20). Dr. Maynard noted at various times that his treatments helped plaintiff with activities of daily living. Plaintiff reported pain at a level of three out of ten when he saw Dr. Masone in January, 2011. MRI studies showed only mild to moderate stenosis in the cervical spine and there were only "minimal clinical signs of impairment, with only scattered references to decreased range of motion and tenderness in the cervical, occipital, and trapezius areas." Id. Also, the ALJ correctly noted that plaintiff "showed no atrophy or weakness in either upper extremity, with only a few notes of decreased sensation in his left upper extremity." Id. In addition, the ALJ noted that plaintiff had sought pain management only recently, did not take a large number of medications, and was able to attend college for two years, taught a pottery class, worked out, and performed various household chores. Id. at 20-21. Finally, the evaluation done by the BWC represented not so much an opinion about plaintiff's capabilities (although there is some of that) but an observation about what he actually did, including lifting. These are all valid reasons for choosing not to give controlling weight to a treating source's opinion, and they are all articulated within the ALJ's decision. Thus, while the ALJ did not expressly state that he was not affording controlling weight to Dr. Masone's opinion, it is apparent from his decision to credit some portions of it and not others that he did just that. The Court concludes that the decision, as a whole, sufficiently explained both to the plaintiff and to a reviewing court the basis for the ALJ's decision not to give Dr. Masone's views controlling weight, and that the intent and purpose of §404.1527(d) was satisfied here. Since the factors cited are all legitimate and supported by the record, so is the ALJ's decision to give significant, but less than controlling, weight to Dr. Masone's conclusions about plaintiff's ability to work - and, in particular, to conclude that plaintiff could lift

heavier weights than Dr. Masone believed he could (twenty pounds versus ten pounds), which is the primary difference between Dr. Masone's assessment of plaintiffs residual functional capacity and the ALJ's assessment.

Plaintiff also makes two other arguments about the medical evidence: that the ALJ must have "made up" his finding about plaintiff's ability to push and pull, and that the ALJ did not discuss Dr. McCloud's opinion, as confirmed by Dr. Hill.  This latter contention raises, at most, harmless error, since the ALJ's residual functional capacity finding was more favorable to the plaintiff than Dr. McCloud's.  The Court does not accept plaintiff's invitation to construe the rule concerning discussion of a state agency physician's opinion as conferring an important procedural right on a claimant.  That concept has been limited to regulations like §404.1527(d), see Rabbers v. Comm'r of Social Security, 582 F.3d 64 (6th cir. 2009), and there is no basis for extending it to this situation.  As to the former, the BWC evaluation indicates a good ability to push and pull bilaterally.  There was a basis for the ALJ's finding on this point, and it does not appear to be particularly material to the jobs which the vocational expert identified.  These are not good reasons for a remand.

Plaintiff also attacks the ALJ's credibility finding. Specifically, he argues that "[t]he ALJ's credibility determination was unsupported by the evidence of record because the evidence relied upon was irrelevant to the conclusions drawn." Statement of Errors, at 16.  He faults the ALJ for using evidence of plaintiff's classwork and teaching as support for the proposition that plaintiff could work; for relying on negative brain scans when the source of plaintiff's headaches was not a brain problem; and for citing plaintiff's history of conservative treatment as evidence that his pain was not debilitating.

It is certainly the law that an ALJ may not reject

-15-

allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record.  See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

The ALJ did, as plaintiff argues, cite to various aspects of the record in support of his finding that plaintiff did not testify credibly about completely disabling symptoms.  However, in addition to those commented on in plaintiff's Statement of Errors, the ALJ noted that plaintiff did not aggressively seek treatment of his headaches until some years after they were diagnosed; that he received effective treatment for them at times, such as an occipital nerve block; that he often described his pain as three or four out of ten and commented at times that he was getting along well; that with chiropractic assistance he was able to complete his vocational rehabilitation and perform various activities of daily living; and that there was some inconsistency between his description of those activities and his claim of disabling pain or headaches.  See Tr. 19-21.

This is one of those cases where any one of those factors, standing alone, might not support a finding that the plaintiff was less than fully credible.  However, it is up to the ALJ to consider all of the evidence of record, taken together, in deciding how much weight to assign to a claimant's testimony.

-16-

Further, "it must be kept in mind that the determination of credibility related to subjective complaints of pain rest with the ALJ and that 'the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly.' <u>Kirk v. Secretary of Health and Human Services</u>, 667 F.2d 524, 538 (6th Cir.1981) <u>quoting Beavers v. Secretary of Health and Human Services</u>, 577 F.2d 383, 387 (6th Cir.1978)." <u>Gaffney v. Bowen</u>, 825 F.2d 98, 101 (6th Cir. 1987).  Here, as in <u>Brazier v. Secretary of Health and Human Services</u>, 61 F.3d 903, *9 (6th Cir. July 13, 1995), "the ALJ did more than simply reject claimant's complaints of totally disabling pain in a conclusory fashion on the basis of credibility; rather, the ALJ discounted claimant's subjective complaints of pain based upon inconsistencies between her testimony and the evidence of record."  When that occurs, the "great deference" given to the ALJ in this area prevents this Court from second-guessing that decision.  <u>See, e.g., Cunningham v. Astrue</u>, 360 Fed. Appx. 606, 613 (6th Cir. January 5, 2010).

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that the Court enter judgment in favor of the defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify,

-17-

in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge